FILED

98 JUL 17 AM 11:05

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

JANE WEATHERFORD, as            )
Administratrix of the Estate    )
of Jack Edward Weatherford,     )
                                )
        Plaintiffs,             )
                                )
vs.                             )   Case No. CV 97-TMP-0087-NW
                                )
NORTHWEST ALABAMA CANCER        )
CENTER, P.C., FLORENCE          )
HOSPITALS, INC., FLORENCE       )   ENTERED
HOSPITAL, J. PATRICK            )
DAUGHERTY, M.D., and            )   JUL 17 1998
HEMANT K. PATEL, M.D.,          )
                                )
        Defendants.             )

MEMORANDUM OPINION

Before the court[1] is the defendants' Motion to Dismiss for lack of subject-matter jurisdiction, filed on February 13, 1998. Upon consideration of the record, the submissions of the

---

[1] The parties have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge, pursuant to 28 U.S.C. § 636(c). See Document No. 51. The Court's General Order of Referral dated July 26, 1996, (since superseded by a similar General Order date May 8, 1998) was the court's order of referral of this case consistent with the consent of the parties.



parties and the relevant law, the court is of the opinion that the motion to dismiss is due to be granted.

## Background

This case arises from the death of Jack Edward Weatherford on January 12, 1995, in Florence, Alabama. On January 13, 1997, the plaintiff, Jane Weatherford, as administratrix of the estate of the decedent, filed a complaint against the defendants pursuant to Alabama Code § 6-5-410 (1975) for the wrongful death of her husband, Jack Weatherford. The complaint alleged that the jurisdiction of this court is based on the diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332(a). Plaintiff alleged that she and the decedent were citizens of Florida at the time of his death. The complaint alleged that the plaintiffs resided in Destin, Okaloosa County, Florida, and the defendants were Alabama citizens and corporations.

On February 13, 1998, the defendants filed a motion to dismiss asserting that the decedent was a citizen of Alabama at the time of his death. They argue, therefore, there was no diversity

of citizenship and this action should be dismissed for lack of subject-matter jurisdiction.

### Facts[2]

For many years prior to 1983, Jack and Jane Weatherford lived in Florence, Lauderdale County, Alabama. At least Jack was born and raised in Florence. Both owned and operated businesses there, and lived as husband and wife there from 1947 to 1983. In 1983, however, they retired and moved to Destin, Florida. During their years in Florida, they lived in leased condominiums and Jack often worked as a maintenance man or resident manager at the condos along the Gulf Coast, until 1989 when he ceased working. They apparently were registered to vote in Florida from 1992 to 1994. Jack also qualified to be a court-appointed guardian ad litem for minors in the Florida court system, but it expired in November 1994 and was not renewed.

---

[2] For purposes of determining whether it has subject-matter jurisdiction, the court is the finder of fact on the subsidiary factual questions relating to the citizenship of the decedent. See Cameron v. Children's Hospital Medical Center, 131 F.3d 1167 (6th Cir. 1997); Moran v. King of Saudi Arabia, 27 F.3d 169 (5th Cir. 1994); Sligh v. Doe, 596 F.2d 1169 (4th Cir. 1979).

3

On August 22, 1994, Dr. James Wilson, an internist from Ft. Walton Beach, Florida, examined Jack for his yearly medical check-up and discovered a mass on the left side of his neck. The medical history provided to Dr. Wilson by Mr. Weatherford stated that he was living in Florence, Alabama. Indeed, the address given to the doctor was an Alabama address, as on August 25, 1994, Dr. Wilson mailed a letter to Mr. Weatherford at P.O. Box 1603, Florence, Alabama, recommending further evaluation of the mass on his neck. Although he had no regular physician in Florence, he wanted to return there for his treatment.[3]

Mr. Weatherford first consulted with Dr. Darren Rowan, a general surgeon, in Florence for diagnosis and treatment of his cancer. He was diagnosed with cancer and the physicians he selected for his treatment were Dr. Patrick Daugherty and Dr. Hemant Patel, whose offices were located in Florence, Alabama. Mr. Weatherford provided his address to these physicians as 1604 Sherrod Avenue, Florence, Alabama, and gave the address of P.O. Box 1603, Florence, Alabama, to two hospitals at which he received treatment, Eliza Coffee Memorial Hospital and Florence Hospital.

---

[3]Jane Weatherford Deposition, at p. 38.

Both hospitals are located in Florence, Alabama. On November 10, 1994, he was seen by an ENT, Dr. E. Earl Walker, who also is located in Florence. On December 5 and 9, 1994, Mr. Weatherford consulted with Dr. James Northington of Florence for a spider bite wound. On each occasion he gave Florence as his address.

Mr. Weatherford was provided medical services for his cancer treatment at Eliza Coffee Memorial Hospital in Florence. On November 14, 1994, he received a CT scan there, and on November 18, 1994, he received placement of a port-a-cath. On December 5, 1994, he went to the Eliza Coffee Memorial Hospital emergency room for complaints of epigastric/substernal pain. From December 19, 1994, to December 30, 1994, he was hospitalized in the Eliza Coffee Memorial Hospital because of complications from chemotherapy treatment. On January 12, 1995, Mr. Weatherford died at Florence Hospital.

Mr. Weatherford's address at the time of his death was 1604 Sherrod Avenue, Florence, Alabama, where he physically resided. This house was owned by Mr. Weatherford's mother-in-law, Ms. Johnnie Mae Olive. All of Mr. and Mrs. Weatherford's furniture and other personal belongings had been moved from Florida to Ms. Olive's home in Florence. By October 1994, Mr. Weatherford did not

5

own, lease, or rent any property in Florida or Alabama, and he had no personal property in Florida. He received all of his Social Security checks at P.O. Box 1603, Florence, Alabama, and he provided that address to Medicare and his supplemental insurance carrier, Blue Cross Blue Shield.

From 1990 to 1993, Mr. Weatherford divided his time between Florence, Alabama, and Destin, Florida. From January 1, 1994, through April or May 1994, Mr. Weatherford lived at 1604 Sherrod Avenue in Florence. He was a registered voter in Lauderdale County, Alabama, from October 10, 1975, to September 4, 1992. On September 4, 1992, he registered to vote in Destin, Florida. On October 14, 1994, however, he was re-identified as a registered voter in Lauderdale County, Alabama, giving 1604 Sherrod Avenue, Florence, Alabama, as his address. Voting officials in Alabama notified Florida voting officials that Jack had re-registered in Alabama. In addition, Mrs. Weatherford also registered to vote in Lauderdale County, Alabama, on October 8, 1994.

Mr. Weatherford did not have any utility services (electricity, water, telephone, or cable television) in his name in Alabama or Florida at the time of his death or at any time prior to his death. Mrs. Weatherford had telephone service in her name in

Florida but disconnected it on June 7, 1994. Even during the time she had the service, the billing address for the account was P.O. Box 1603, Florence, Alabama. Mr. Weatherford was not employed at the time of his death, and his last job ended on November 4, 1989. He never had a bank account in Florida, but Mrs. Weatherford had a joint checking account there with her mother, Johnnie Mae Olive. He once had a real estate license in Florida, but it lapsed and was deleted due to non-renewal in 1993.

Mr. Weatherford attended Faith Tabernacle Church in Florence, and stated in medical documents recorded by Florence Hospital that his religious affiliation was with the Faith Tabernacle in Florence. Following his death, Mr. Weatherford's funeral was at Greenview Funeral Home in Florence, and he was buried at Greenview Memorial Park in Florence. Mr. Weatherford's three daughters and their families lived in Lauderdale County at the time of his death, and he had no family living in Florida.

Mrs. Weatherford stated in her deposition that Mr. Weatherford had a Florida driver's license and his vehicle was registered in Florida. She and two daughters testified that Jack planned to return to Florida following his cancer treatment and get a job there. He was 68 years old at the time of his death.

7

## Discussion

Under the diversity-jurisdiction statute, a plaintiff acting as a personal representative is "deemed to be a citizen of the state of which the deceased was a citizen at the time of death." <u>Palmer v. Hospital Authority of Randolph Co.</u>, 22 F.3d 1559, 1562 (11th Cir. 1994); <u>James v. Three Notch Medical Center</u>, 966 F. Supp. 1112, 1116 (M.D. Ala. 1997); <u>see</u> 28 U.S.C. § 1332(c)(2).[4] To determine whether the court has diversity jurisdiction, therefore, the Court must determine the citizenship of Mr. Weatherford at the time of his death. It is not the citizenship of the Mrs. Weatherford as personal representative that matters, but that of Mr. Weatherford at the time of his death.

Since it appears to be undisputed that all of the defendants are citizens of Alabama, the court has diversity

---

[4] Section 1332(c)(2) provides:

> For the purposes of this section and section 1441 of this title - the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent."

8

jurisdiction over this case only if Mr. Weatherford was <u>not</u> a citizen of Alabama at the time of his death. Because federal courts are courts of limited jurisdiction, the burden of establishing diversity of citizenship rests upon the party invoking it and, when challenged, that party also bears the burden of proving the facts necessary to support it. <u>James v. Three Notch Medical Center</u>, 966 F. Supp. 1112 (M.D. Ala. 1997); <u>Spann v. Northwestern Mutual Life Insurance Company</u>, 795 F. Supp. 386, 390 (M.D. Ala. 1992). The plaintiff in this case has the burden of proving that Mr. Weatherford was <u>not</u> a resident citizen of Alabama at the time of his death.

"For purposes of diversity jurisdiction, citizenship is the same thing as domicile." <u>Rayfield v. National Auction Group, Inc.</u>, 878 F. Supp. 203 (M.D. Ala. 1995)(citing <u>Stine v. Moore</u>, 213 F.2d 446, 448 (5th Cir. 1954)[5]). "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom ....'" <u>Rayfield</u>, 878 F. Supp. at 206 (citing <u>Mas</u>

---

[5] In <u>Bonner v. City of Pritchard</u>, 661 F.2d 1206 (11th Cir. 1981)(en banc), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

v. Perry, 489 F.2d 1396, 1399 (5th Cir.), cert. denied, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed. 2d 70 (1974); Spann v. Northwestern Mutual Life Insurance Company, 795 F. Supp. 386, 390 (M.D. Ala. 1992). "[T]o effect a change of one's legal domicile, two things are indispensable: First, residence in the new locality; and second, the intention to remain there.... Both are alike necessary. Either without the other is insufficient." Rayfield, 878 F. Supp. at 206 (citing Welsh v. American Surety Co. of New York, 186 F.2d 16, 17 (5th Cir. 1951)). Furthermore, "statements of intent are entitled to little weight when in conflict with [objective] facts." Lew v. Moss, 797 F.2d 747 (9th Cir. 1986)(citing Freeman v. Northwest Acceptance Corp., 754 F.2d 553, 556 (5th Cir. 1985); Hendry v. Masonite Corp., 455 F.2d 955, 956 (5th Cir.), cert. denied, 409 U.S. 1023, 93 S. Ct. 464, 34 L. Ed. 2d 315 (1972)).

In determining Mr. Weatherford's domicile, the Court must look to his entire course of conduct as the controlling factors of determining domicile. Soghanalian v. Soghanalian, 693 F. Supp. 1091 (S.D. Fla. 1988)(citing Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954)). Numerous specific objective factors used to determine where a domicile has been established include: (1) location of employment; (2) home ownership and ownership of other real

10

property; (3) location of one's household furnishings; (4) registration and title to one's automobiles; (5) driver's licensing; (6) voter registration; (7) payment for utilities; (8) banking; (9) acquiring a telephone number and listing it; (10) receiving mail; and (11) establishing membership in local professional, civic, religious, or social organizations. Rayfield, 878 F. Supp. at 206 (citing Simmons v. Skyway of Ocala, 592 F. Supp. 356, 358-359 (S.D. Ga. 1984)). Other factors include: (1) location of spouse and family, and (2) payment of taxes. Lew v. Moss, 797 F.2d 747 (9th Cir. 1986).

On the first element of domicile, residency, there is no dispute that Mr. Weatherford was physically residing in Florence, Alabama, at the time of his death. It is without dispute that by August of 1994, he was living in his mother-in-law's house on Sherrod Street in Florence while receiving treatment for his cancer. At that time, he neither owned nor leased any home in Florida. While he may have had access to a condo upon request, he was not occupying one any time after August 1994. Thus, the residency element being satisfied, the only question concerning domicile is whether Mr. Weatherford intended for Florence to be his "true, fixed, and permanent home and principal establishment."

11

Notwithstanding the affidavit and deposition testimony of Mr. Weatherford's wife and daughters that he intended to return to Florida once his cancer treatment was finished, the overwhelming evidence indicates that Mr. Weatherford intended for Florence, Alabama, to be his home in January 1995, and this court finds as a fact that he intended to be and was a domiciliary and citizen of Alabama at that time. Almost all of the specific objective factors cited in <u>Rayfield</u> and <u>Lew</u> point to the fact that Mr. Weatherford was a citizen of Alabama at the time of his death. While he did not own, rent, or lease any property anywhere, he lived in his mother-in-law's home from at least January 1994 to April or May 1994, and again from August 1994 until his death in January 1995. All of Mr. Weatherford's personal property and household furnishings were relocated to Florence following his diagnosis. Upon returning to Alabama, in October 1994 both he and his wife registered to vote in Lauderdale County, Alabama, and remained so until the time of his death.[6] Although he did not have any bank accounts or utilities listed in his name, Mrs. Weatherford had

---

[6]Indeed, Mrs. Weatherford remained a registered voter in Lauderdale County until only few days before her deposition was taken in this action in December 1997.

12

telephone services in her name in Florida disconnected and canceled in June 1994. Even while she had the service, the mailing address for the bill was in Florence, Alabama. All during his time in Florida, Mr. Weatherford continued to receive all of his mail at his Florence addresses, including his social security benefit checks and his Medicare and Blue Cross Blue Shield medical documents. Even his Florida physician was given a Florence, Alabama, address for billing and correspondence. From August 1994 until his death, Mr. Weatherford's health care providers were all located in Florence, and he reported in all of the medical forms that his address was in Florence. He was a long-time member of and attended the Faith Tabernacle Church in Florence, and all of his family was located there. Even after his death, Mr. Weatherford's funeral and burial were in Florence. Only Mr. Weatherford's driver's license and vehicle registration were in Florida.

     Perhaps most telling of his true intent was his conduct upon learning that he had cancer. Although residing in Florida and being first diagnosed by a Florida physician, he immediately resolved to return to Florence and seek treatment, even though he had no regular doctor there. His desire to obtain treatment in Alabama suggests clearly that he intended to return to the place he

believed was home during his time of crisis. He was born and raised in Florence, his daughters and family all lived there, and his church was there. Being faced with a grave medical crisis, he sought help not in Florida where he was then living, but in Florence where he felt comfortable and "at home."

These facts clearly support the conclusion that Mr. Weatherford was a citizen of Alabama at the time of his death. Florence was truly to him his "true, fixed, and permanent home and principal establishment." Although he sojourned in Florida, it was always to Florence that he returned. Certainly, at the time of his death in January 1995, Florence was intended by Mr. Weatherford to be his home. Accordingly, because there is no diversity of citizenship between the deceased plaintiff and the defendants, the court lacks subject-matter jurisdiction and the motion to dismiss filed by the defendants is due to be GRANTED.[7]

---

[7]While the court sympathizes with the argument made by plaintiff that, if dismissed here, the statute of limitation will preclude her from re-filing in Alabama state court, leaving her without a remedy, subject-matter jurisdiction cannot be conjured from sympathy or even equity. It either exists or it does not. There is no "equitable" exception to the necessity that the court possess jurisdiction before it proceeds with granting a judgment. Unfortunately for plaintiff, the facts here clearly establish that the decedent was a citizen of Alabama at the time of his death and, therefore, not even minimal diversity of citizenship existed

By separate order, the court will grant the motion to dismiss and will dismiss the action without prejudice due to want of subject-matter jurisdiction.

DONE this 16th day of July, 1998.

*[signature]*

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

---

between him and the defendants, all of whom are Alabama citizens or corporations. Lacking that essential diversity, the court simply does not possess subject-matter jurisdiction.